

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

BTR
F. #2004R00034

September 16, 2022

By E-mail and ECF

The Honorable Joanna Seybert
Senior United States District Judge
United States District Court
Eastern District of New York
1034 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. James Argentina
                Criminal Docket No. 04-009 (JS)

Dear Judge Seybert:

      The United States of America respectfully submits this response in opposition to the motion, filed by defendant James Argentina ("Defendant") on August 31, 2022, seeking release from his federal criminal sentence based on compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 148). In that motion, Argentina argues, based on the Bureau of Prisons ("BOP") discovery and emergency treatment of his kidney cancer, the Court should now immediately release him from his federal sentence and permit him to work in an office supervising stone masonry construction. He is not entitled to such release.

      Argentina is presently housed at the Federal Medical Center in Butner, North Carolina where he is being treated and receiving advanced immunotherapy medical care. Absent from Argentina's arguments is evidence that the has presented the same facts assembled for the Court's consideration to the BOP, to permit them to address his request administratively. Indeed, the expert prognosis and evaluation the defense submits from Dr. Gyan Pareek, MD was not obtained until weeks after the Warden of US Penitentiary Big Sandy reviewed and denied Argentina's initial application for "compassionate release." As a result, the defendant not having presented those considerations to the Warden, it cannot be said that Argentina has exhausted his administrative remedies. On that basis alone, the application should be denied.

      Secondarily, the defendant's long term kidney cancer condition was both discovered and given emergency treatment by the BOP, which has now transferred him to a Federal Medical Center to provide advanced follow up medical treatment. Argentina's argument that the BOP has been negligence is completely unsustainable. (Dkt, No. 148).

Kidney cancer is rare and its symptoms (blood in the urine (hematuria)), low back pain, fatigue, loss of appetite, and weight loss) are all easily mistaken for other less serious conditions.[1] Blood in the urine is most often caused by a bladder or urinary tract infection or a kidney stone. Indeed, urine and blood tests, a common response to blood in the urine, do not test for kidney cancer. That diagnosis usually requires a separate scan of the kidney.[2] Moreover, given the large size of the tumor discovered through the emergency medical care offered by the BOP, it appears that the cancer has been growing for some time. No doubt longer than the year Argentina has been in federal custody. The BOP should be commended for successfully attending to Argentina's symptoms and providing him the emergency care to remove the cancerous kidney, a condition undiscovered while the inmate was in state custody.

Argentina's prognosis does not present "extraordinary and compelling reasons" for his early release. He is receiving intravenous immunology and is able-bodied and capable of self-care. Indeed, he asserts he is fully capable of working in an office setting. He is equally capable of serving his appropriate sentence.

Finally, nowhere does Argentina address the weight of the sentencing factors in 18 U.S.C. § 3553(a) and the defendant's criminal history, all of which mitigate against his release. Accordingly, on all these grounds this Court should deny the defendant's motion.

**Offense Conduct and Sentencing**

The defendant has only recently been placed in federal custody, in August 2021. Argentina was transferred from New York State custody, after having served a sentence of 21 years on a 25-year sentence, imposed for the torture-murder of an individual who cooperated with the police concerning a shooting in Suffolk County. Argentina was convicted after trial of kidnapping and conspiracy in that case. (Presentence Investigation Report ("PSR") at p. 30).

The state sentence is unrelated to Argentina's conduct here, where Argentina acted as a hired gun and enforcer in a dispute over stolen drugs between two drug gangs in Suffolk County. For that conduct, detailed below, Argentina was convicted at trial and received a federal sentence of 360 months imprisonment. The Court imposed that sentence concurrently with the New York State Sentence, except for 84 months imposed for the brandishing of firearms, which by statute must be served consecutively. See: 18 U.S.C. 924 (Count 10). The Bureau of Prisons ("BOP") calculates the defendant will be released May 31, 2029, approximately 94 months from today.

From his early teens until imprisoned in 2004, the defendant has been a violent criminal, involved in a career of drug dealing, theft and intentionally threating, hurting or aiding people's death for his personal gain. As a result, Argentina was arrested, convicted and imprisoned on 17 separate occasions and spent numerous years imprisoned. (PSR at p. 22-35).

In the present case, Argentina was a hired gun, recruited to retrieve drugs and revenge the theft of marijuana taken by members of a Suffolk County cocaine distribution gang,

---

[1] Renal Cell Carcinoma - NORD (National Organization for Rare Disorders) (rarediseases.org)
[2] Diagnosing Kidney Cancer | NYU Langone Health

headed by Samuel Torres, from a Suffolk County marijuana distribution ring headed by Warren Hazen. Argentina, armed and brandishing a 9-millimeter Beretta semi-automatic handgun, was offered $3,000 to retrieve the stolen drugs. Cruising the suspected thief's neighborhood, Argentina and another, flashing guns, kidnapped the two men they suspected and hijacked the car they were in. Argentina then directed them to one of the thief's family home. There they saw a third man outside the home, who was also detained at gunpoint. From the home $27,000, 1,500 MDMA ("ecstasy") pills and one and one-half kilograms of cocaine was taken. They then drove to the second suspected thief's home. During the evening the two thieves were beaten and told by Argentina or his armed associate that they going to die that evening. At the second home Argentina and his associated recovered a duffle bag contained the stolen 10 to 15 pounds of marijuana, a bulletproof vest, and various weapons (Tech 9 pistol with a silencer and a 9-millimeter handgun). James Argentina then ordered the two thieves into the trunk of the vehicle and flattened tires of the vehicle. The third man, seized outside the first home, could not fit in the trunk of the vehicle and therefore, was ordered to flee on foot. (PSR at p. 6-10)

Following the retrieval of the drugs, Argentina and his armed associates contacted Warren Hazan to deliver the stolen drugs. The group met at a hotel where they rented a room, split the remaining drugs and ordered female escorts. This conduct occurred in the context of Samuel Torres conducting drive by shootings and arsons of the two groups associates. (PSR at p. 10).

Argentina's conduct here paralleled his state conviction for the torture kidnapping and death of an individual, who Argentina suspected cooperated with the police concerning a shooting in Suffolk County. Argentina, after being convicted at trial, received a 25-year sentence for that crime. (PSR at p. 30).

Thus, the court concluded that the applicable § 3553(a) sentencing factors could not support justifying the defendant's release given the serious nature of the defendant's criminal conduct and prior criminal history. Again, no change in circumstances has been presented for the Court to reconsider those findings.

I. **Applicable Law**

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1). A defendant must satisfy three requirements for the court to grant a motion for compassionate release. See Keitt, 21 F.4th at 71.

"First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting [compassionate release] from prison authorities." Id. In particular, a defendant must "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf" or wait until 30 days

3

after "the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Second, a court must find that "extraordinary and compelling reasons" warrant a sentence reduction "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under the relevant Sentencing Commission policy statement, a court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3).

Third, a court must consider "'the factors set forth in [§] 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). These factors include, among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (3) the need for the sentence imposed to protect the public from further crimes of the defendant, and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). Thus, the existence of "extraordinary and compelling reasons" does not necessarily compel compassionate release if the court determines that the § 3553(a) factors warrant continued imprisonment. See United States v. Gotti, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020) (explaining that "a defendant who meets all the criteria for compassionate release consideration . . . is not thereby automatically entitled to a sentence modification" but rather "simply eligible for a sentence modification" since a "court confronted with a compassionate release motion is still required to consider all the [§] 3553(a) factors to the extent they are applicable" (emphasis added)).

A "defendant bears the burden of demonstrating his eligibility for compassionate release." See United States v. Antney, 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 30, 2021) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." United States v. Garcia, 2021 WL 1616914, at *3 (E.D.N.Y. Apr. 26, 2021) (citation omitted).

**II.    Argument**

Defendant seeks compassionate release on the basis that BOP has not provided him with adequate medical treatment and, raised here for the first time, that his prognosis for an extended life span are poor. (Dkt. 148). Defendant has a serious medical condition, kidney cancer, that was discovered by the BOP for which the defendant has been provided both emergency care at FP Big Sandy and, now at FMC Butner, extended advances immunology care. See Exhibits A, B and C attached hereto.

However, Defendant has failed to satisfy any of the three requirements for granting compassionate release, and his request, therefore, should be denied. Defendant has not submitted any proof that he has exhausted his administrative remedies with BOP since the initial denial of his motion. As noted in the Courts denial of the original motion no administrative appeal of the Wardens denial of compassionate release has been filed. (Court's Decision and Order, October 19, 2022, Dkt. No. 33). To the extent that the current motion submits new grounds not previously presented to the Warden, there is no indication that any new grounds for compassionate release have been submitted to the Warden, nor that more than 30 days have lapsed since such a request, as required, see 18 U.S.C. § 3582(c)(1)(A).

Defendant thus, has failed to exhaust his administrative rights. To the extent the defendant is presenting new facts for consideration those new facts are required to be subject of a new application to the Warden and subject to a separate exhaustion of administrative remedies, which has not occurred. See United States v. Gomez, 2022 WL 61317, at *2 (S.D.N.Y. Jan. 5, 2022) (denying renewed motion where the defendant had "not sought compassionate release from the warden based on the facts presented [in the instant application]"); United States v. Nwankwo, 2020 WL 7335287, at *1 (S.D.N.Y. Dec. 14, 2020) (underscoring that exhaustion is required where a renewed motion presents "new bases for compassionate release"). "[W]here a compassionate release motion is brought by a defendant who has not fully exhausted all administrative rights, the district court may not modify his term of imprisonment." United States v. Carbonaro, 2022 WL 3536116, at *1 (S.D.N.Y. Aug. 18, 2022) (internal quotation marks omitted); cf. Washington v. Barr, 925 F.3d 109, 116 (2d Cir. 2019) ("Where Congress specifically mandates it, exhaustion is required." (alteration and internal quotation marks omitted)); Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004) ("[C]ourts are required to strictly enforce statutory exhaustion requirements."). This Court, therefore, should deny the current motion.

Even had the defendant satisfied the exhaustion requirement, the "motion for reconsideration" necessarily fails because Argentina has not met his "burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." Gotti, 433 F. Supp. 3d at 619; cf. Butler, 970 F.2d at 1026 ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."). Though the United States does not make light of defendant's health conditions, the current motion fails to meet the requisite threshold for compassionate release.

The defendant's allegation that the BOP has been negligent in diagnosing and treating him is not supported by the medical records. Defendant's medical records make clear that BOP has worked to ensure that he receives treatment for blood in his urine. Indeed, the BOP has provided extensive medical treatment to the defendant for his many ailments. Argentina's motion relies entirely on a statistical prognosis; however, the cancerous growth has been removed by surgery. He is receiving recommended immunological treatment. He is currently ambulatory and able to self-care. Defendant fails to meet its burden of demonstrating that Defendant's medical condition constitutes an "extraordinary and compelling" reason justifying release. Cf. United States v. LeBlanc, 2022 WL 293246, at *4 (E.D. La. Feb. 1, 2022) (finding the defendant had not established "extraordinary and compelling reasons" based on her MS where she alleged "she is not receiving timely medical treatment" but her medical records

"indicate that BOP health services has been responsive to her requests for treatment"). United States v Jones, 2020 WL 278239510 at (D. Conn. May 29, 2020)(bilateral kidney cancer, in remission, after surgical removal of parts of both kidneys, insufficient for release given availability of medical treatment through BOP).

The defendant has failed to demonstrate that BOP's treatment is, in fact, inadequate or below the standard of care he would receive elsewhere. See, e.g., United States v. Hicks, 2021 WL 51398, at *2–3 (E.D. Mich. Jan. 6, 2021) (holding that the defendant's essential hypertension, which was being treated with medication, did not rise to the level of an "extraordinary or compelling" reason warranting release); cf. United States v. Gonzalez, 2021 WL 681142, at *10 (D. Conn. Feb. 22, 2021) ("[S]everal courts have denied inmates' motions for compassionate release based on those inmates' hypertension when those inmates have failed to show that the BOP's treatment was in some way inadequate"), reconsideration denied, 2022 WL 2159886 (D. Conn. June 15, 2022); United States v. Ackerman, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (underscoring that "[w]here . . . there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted"). Accordingly, the motion for reconsideration based on "extraordinary and compelling" medical reasons should be denied.

Finally, even if the defendant could show "extraordinary and compelling reasons" justifying a sentence reduction, the Court still must consider the § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A); see also Jones, 17 F.4th at 374 ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)"). These factors may serve as "an alternative and independent basis for denial of compassionate release." United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021); see also United States v. O'Neil, 2021 WL 1616915, at *1 (E.D.N.Y. Apr. 26, 2021) (explaining that the § 3553(a) factors can "override, in any particular case, what would otherwise be extraordinary and compelling circumstances"). Review of the § 3553(a) factors in defendant's case "presents an insurmountable barrier to relief." United States v. Markou, 2020 WL 6945923, at *2 (E.D.N.Y. Nov. 25, 2020).

First, with respect to "the nature and circumstances of the offense" and "the need to impose a sentence that "reflect[s] the seriousness of the offense," it bears emphasis that the offenses of conviction—violent crimes arising from drug trafficking, kidnapping and robbery - are incredibly serious. The harm inflicted by violent drug gangs within the Eastern District of New York and elsewhere cannot be understated.

Second, Defendant's criminal history also counsels against Defendant's early release. Indeed, his lengthy criminal career, with numerous felony and misdemeanor convictions, require consideration of both specific deterrence and the need to protect the public from further crimes of the Defendant. Such an analysis counsels against granting the application. See United States v. Roney, 833 F. App'x 850, 853-54 (2d Cir. 2020.

Third, "the need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense" demands the defendant's continued detention,

particularly given that he has served only half of the sentence imposed by the Court.  As set forth above, this is a serious case in which Defendant acted as an armed enforcer for a drug gang distributing drugs within the Eastern District of New York.  Moreover, the defendant's obstruction of justice threating a witness, must be noted.  Cases of this nature, showing a dedication to criminal conduct, require substantial custodial sentences, which are among the best ways to communicate to the community that it will be protected, and that the guilty will be punished and required to serve the entirety of the imposed sentence.

Accordingly, a sentence reduction would "fail to achieve the important policies of the § 3553(a) factors—namely, providing just punishment, affording adequate deterrence, and promoting respect for the law."  United States v. Tranese, 2021 WL 25371, at *2 (E.D.N.Y. Jan. 4, 2021); see also, e.g., United States v. Gioeli, 2020 WL 2572191, at *5 (E.D.N.Y. May 21, 2020) (concluding that the § 3553(a) factors weighed against compassionate release because a sentence reduction would "diminish[] his transgressions and undermin[e] the goals of the original sentence").

### Conclusion

For the reasons set forth above, the United States respectfully requests that the Court deny the motion.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Burton T. Ryan, Jr.
Burton T. Ryan, Jr.
Assistant U.S. Attorney
(631) 715-7853

Enclosures (Medical records under Separate cover)
cc:     James R. Froccaro, Jr., Counsel for Defendant
        Clerk of the Court (w/o Enclosures)